## BEACH *a.* GREGORY.

*New York Common Pleas; Special Term, July,* 1855.

BILL OF EXCEPTIONS.—PRACTICE IN CASE OF DEATH OF PARTY.

After decision upon a case made with leave to turn the same into a bill of exceptions, no exceptions can be taken but such as appear in the case.

Where a defendant dies after the argument of an appeal and before the decision, and the judgment of affirmance is thereupon entered, *nunc pro tunc.* as of a day before his death, the thirty days limited by rule 18 for turning the case into a bill of exceptions, do not begin to run until the personal representatives of the deceased are made parties to the suit.

The plaintiff may proceed to collect his judgment, and the representatives must at their peril cause themselves to be made parties, or the judgment must be enforced against them.

Motion that defendants be prohibited from turning a case made into a bill of exceptions, and from incorporating into their bill of exceptions, certain exceptions which they had proposed to insert.

*M. S. Brewster,* for the motion.

*H. B. Cowles,* and *Charles Jones,* opposed.

WOODRUFF, J.—After the trial of this action before a referee, a case was made containing leave to turn the same into a bill of exceptions, and an appeal was taken (from the judgment entered on the report of the referee) to the general term of this Court. After the argument of the appeal, and while the court had the same under advisement, the appellant Raymond, on the 23d day of March, 1854, died. Afterwards, on April 1st, 1854, the decision of the general term was given, by which the judgment was affirmed provisionally, that is to say, provided the plaintiff would remit a portion of the amount due, which was done on or about April 3d, 1854, and a written notice of such remission was served on the attorneys who had appeared for the deceased defendant in the action, and the judgment of affirmance was entered on the 6th of the

same month, and by the order of the Court on such affirmance, this judgment was entered as of a previous day, in the lifetime of said Raymond.

On the 4th day of the same month, administration of the goods, &c. of the deceased defendant was granted to the above named defendants, Gregory, &c. And on March 31st, 1855, the plaintiff presented to the administrator his claim for the amount of the judgment as thus affirmed, accompanied by an affidavit which contained a statement of the recovery of the judgment, and that the appeal therefrom to the general term was decided on at April 1, 1854, and judgment of affirmance for the amount fixed by the general term was entered on April 6, 1854, and duly docketed.

Thereafter, on June 18th, 1855, the administrators applied for and obtained an order that the suit be revived in their names for the purposes of an appeal to the Court of Appeals, and for that purpose making them parties defendant in the place of their said intestate ; and on the same day, a proposed bill of exceptions was served on their behalf, on the plaintiff's attorney.

The plaintiff's attorney, therefore, submits the present motion, in which he seeks to " prohibit the defendant from turning the aforesaid case into a bill of exceptions, and from incorporating into any bill of exceptions, the proposed exceptions thus served upon him ;" and the motion is mainly urged upon two grounds :—

*First.* That it is too late now to turn the case into a bill of exceptions.

*Second.* That the proposed exceptions do not appear in the case as made, and the defendants are too late to take new exceptions, (*Code*, §§ 268 & 272), the ten days limited therefor, having long since elapsed ; that the only exceptions which can now be presented by bill, are those which appear by the case itself, that being turned into a bill of exceptions pursuant to the leave given.

I am decidedly of opinion, that the plaintiff's attorney is correct in his view of this second proposition. The defendant had by section 268, ten days after written notice of the judgment, to make a case, or to except to the decision of the re-

feree, or, if leave be given, to make a case with liberty to turn that case with all the exceptions appearing thereon into a bill of exceptions. I know of no reason why the making of a case should operate to enlarge the time for making a bill of exceptions, except according to the very tenor of the leave reserved in the case for that purpose, and that leave is not a leave to take exceptions in the future, but to convert the case (made for the purpose of reviewing the report of the referee, and which embraces his ruling upon the law as well as his finding upon the evidence) into a bill that shall exhibit the exceptions already taken, and which alone is suited to the purposes of an appeal to the court of last resort. It would seem from the provisions of rule 18, that the bill of exceptions made up from the case is to be settled by one of the judges of the Court, and if so, the case must serve as the guide of the judge in settling the exceptions.

The application of this view of the subject to the present action however, is to be made hereafter, when the exceptions come to be settled. If the exceptions, as proposed, are not such as were duly taken, the plaintiff will properly raise his objections thereto by way of amendment, and not by motion to prohibit the defendants from proposing the exceptions and offering them for settlement.

So far, therefore, as this motion rests upon the ground that the defendants propose now to insert in their bill some exceptions which do not arise in the case, the plaintiff has, I think, mistaken the mode of raising the objection, since it is conceded that the objection is not applicable to all the exceptions proposed.

The first ground of the motion above stated, rests upon the provisions of rule 18, by which it is provided that " when a party shall be entitled to turn a case into a special verdict or exceptions, he shall have thirty days after notice of the decision thereon to prepare and serve such special verdict or exceptions."

The decision of this Court in general term upon this case, was pronounced April 1, 1854, and notice thereof was served upon the attorneys who had represented the intestate in his life-time, on the 4th of the same month. And on March 31, 1855, the.

present defendants, administrators, &c. who already had actual knowledge of the decision, were served with the plaintiffs' claim against the estate of their intestate, containing written notice of the affirmance of the judgment by such general term.

By the death of the defendant the authority of his attorneys ceased ; *he* was no longer in court. And had his presence as a party been necessary, the plaintiff must after his death have caused his representatives to be made parties before any step in the cause could be taken. He could not have brought the appeal to argument after the death of the defendant without causing the administrators to be brought in. But the appeal having been brought to argument, heard, and submitted to the Court for determination, it was competent and proper in conformity with the well-settled practice heretofore prevailing, that the Court should award judgment (if need be) as of the day on which the cause was in fact submitted to them, or of any subsequent day before the death of the defendant. For all purposes for which the actual presence of the defendant in Court, either in person or by attorney, was necessary, he was there ; all that remained was for the Court to declare *their* decision and award judgment accordingly. This practice, originally adopted to avoid the effect of the abatement of the suit, wrought no inconvenience or injustice, and made the record consistent with the theoretical presumption and formal requirement, that the parties are before the Court in all stages of its action in the cause. Indeed the late Supreme Court in Springsted *a.* Jayne, (4 *Cow.* 423,) appear to have gone much further, and to have held that after verdict, a motion for a new trial may be brought to argument by the plaintiff's counsel, although the plaintiff died before judgment and before the motion for a new trial was noticed. (Ames *a.* Webber, 10 *Wend.*, 575.) They clearly recognize in that case the authority of the attorney to act for the deceased plaintiff, though administration had not been granted ; and it has been held that where one gave a warrant of attorney to confess judgment and died before the judgment was entered, the judgment entered thereon was regular, (Andrews *v.* Showell, *Raym.*, 18.)

Beach *a.* Gregory.

But the latter case evidently proceeds upon the idea that a warrant of attorney to confess a judgment, founded on sufficient consideration is not revocable; and in the former case, the attorney for the deceased plaintiff assumed to act, and the court were of opinion, that the defendant could be in no wise prejudiced by having his own motion for a new trial heard, and treating all things as if the plaintiff were still alive until the question as to the new trial was decided. I very much doubt that had the plaintiff's attorney declined acting, the defendant could have proceeded in the action adversely to the intestate, without some order requiring the representatives of the deceased to be notified, or that the court would have allowed the suit to proceed *after* such new trial was ordered.

The general rule is, I think, that the death of the defendant operates as a revocation of the power of his attorneys; and if it becomes necessary for the plaintiff to take any step to affect the rights of his representatives, he must cause them to be brought in. This seems to me much the most convenient and rational conclusion in respect to the application of Rule 18, above referred to. To hold that where a party dies while his appeal is under consideration, his representatives must, upon notice to their intestate's attorney, cause a case to be turned into exceptions in thirty days, would often be not only inconvenient but impracticable; and to hold the attorney bound after the death of his client to do anything towards further litigation unless upon due retainer by such representatives, would be unjust to him.

And be it observed that this view of the subject does not prevent the plaintiff's taking any measures for the enforcement of his judgment, or the collection of the amount due thereon, which the law furnishes to him as against the estate of the deceased; and if the administrators wish to litigate further, *they* must within the time allowed for appealing, place themselves in a situation in which they can prosecute their appeal.

On that subject it appears to me a little remarkable, that although the Revised Statutes provided in terms for the bringing of writs of error " by the party against whom the judgment complained of was rendered," and " in case of *his death*, by his executors or administrators," and in certain cases " by

the heirs or devisees of the deceased," the legislature by the Code of procedure, after abolishing writs of error substituted appeals in all cases, have defined the person who may appeal in the brief terms—"*Any party aggrieved*" may appeal, &c., (§ 325). If "party" in the Code is to be taken in the sense in which it is used in the Revised Statutes, there would seem to · be no right given to executors and administrators, &c., to appeal in any case. I think, however, it must be taken in a more comprehensive sense to mean any person aggrieved; but yet a person who stands in the relation of a party to the action, and in this sense to imply when considered in connection with section 121, that the administrators or executors must first cause themselves to be made parties for the purposes of the appeal, and this is in conformity with the former Chancery practice to which our present appeals are clearly analogous.

And this view of the subject suggests the remaining inquiry, whether the notice of claim served on the administrators in this case, was such a notice as by Rule 18, limited their right to turn the case into exceptions. Laying out of view the fact, that this notice of claim was presented for the purpose of collection from the administrator, and in pursuance of the advertisement under the order of the Surrogate for the presentation of claims, and the argument of counsel founded thereon, that it was a paper prepared not as a proceeding in the action, but for a totally different purpose, the question remains, was it in any form a service upon *a party* within the meaning of Rule 18, so as to set the thirty days to running against him. This question is closely allied to another, which arises under section 332 of the Code, which provides that the appeal to the general term must be taken within *thirty days* after written notice of the judgment or order shall have been given to the party appealing. The time limited for an appeal to the Court of Appeals, must be taken within two years after the judgment. What relief, if any, persons who were entitled under the Revised Statutes to bring writs of error, or prosecute appeals from the Court of Chancery, but under disability, can have under the Code after the expiration of two years, or whether the representatives of such person can have any appeal after that time

Beach *a*. Gregory.

in case of his death, it would be interesting to inquire. (See 2 *Rev. Stats.* 595 ; §§ 22, 23, 24. *Ib.* 605, § 78).

But it will be observed, that the two years begins to run with the judgment entered in the lifetime of the party ; and it would seem that for this purpose the administrators must take notice of the judgment at their peril. The thirty days limited by section 332, begins to run with the service of written notice of the judgment given to the party appealing. Now, if a notice to an administrator of a judgment recovered against his intestate, operates to limit the right of appealing to the general term, I perceive no reason for not giving the like construction to rule 18, and holding that the like notice given of a decision of the general term operates to limit the right of the administrator to turn a case made by his intestate into a bill of exceptions.

The term " party appealing," must be taken to mean the party in whom is the right to appeal ; for until an appeal is in fact brought, there is in strictness no party appealing ; if the words are to be taken literally, there could be no notice served on the *party appealing* which should limit his right to appeal. But whether the word *party* in this section is to be taken for " person ;" and so the section, being read as if it said, thirty days after service of written notice on the *person* in whom is this right of appeal, implies also that such person shall be a party to the action, is the question bearing on this inquiry, and I think it not free from doubt. I have already suggested that the words " party aggrieved" in section 325, should be taken in a sense comprehensive enough to embrace the representatives of the deceased party to the suit : and the same view should, I think, be applied to section 332 ; and so also, as I think, the administrator before he can appeal (as above suggested), should cause himself to be made a party for that purpose ; the plaintiff on the other hand, wishing to proceed by *notice* to limit the right of appeal, should cause the administrator to be made a *party* under section 121. This construction seems to me most consistent, and best calculated to protect all interests, and to prejudice no one. The plaintiff's proceedings are in no wise stayed by this view of the subject ; and if his cause is in a situation in which it is important for him to fix a limit to further litiga-

tion, he can take the proper steps for that purpose, or otherwise proceed to collect his judgment, and leave the representatives of the deceased to cause themselves to be put into a condition to appeal, if they think it advisable to do so.

In Miller *v.* Gunn, (7 *How. Pr. R.*, 159), Justice Harris declines saying, that the terms " any party aggrieved," are not broad enough to authorize an appeal by the representatives of the deceased, without their first being made parties to the suit. But he deems it clearly more orderly for such parties before appealing, to be made parties under section 121.  The point may be doubtful, but I incline to hold, that it is essential to the due conduct of the action, and the proper record of the proceeding, that it should be done; and in my opinion, the same view should be applied to rule 18, affecting directly one of the steps in the action, without which no appeal would be of any avail.

In view of the novelty of the questions raised on the motion, and the obscurity which hangs over the subject, I should have felt constrained, had my conclusion been different, to give the defendant indulgence on the ground that his counsel had mistaken the practice, the rule being a rule of the court which we have power to relax: but after consideration, I am of opinion, that the time for turning the case into exceptions, within the proper construction of that rule had not elapsed when the proposed exceptions were served.

The motion must be denied, and under the circumstances, I think the costs of the motion, $10, should abide the final event of the suit.